United States District Court
For the Northern District of California

1

2

3

4

5

6                       IN THE UNITED STATES DISTRICT COURT

7                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9     RCM INTERNATIONAL, LLC,             )  Case No. 14-CV-04788 SC
                                          )
10                  Plaintiff,            )  ORDER GRANTING PLAINTIFF'S
                                          )  MOTION TO REMAND
11          v.                            )
                                          )
12    ALPENTAL ENERGY PARTNERS, LLC;      )
      BLUE MOUNTAIN BIOGAS, LLC           )
13                                        )
                                          )
14                  Defendants.           )
                                          )
15                                        )
                                          )
16                                        )
                                          )
17                                        )
                                          )
18    _____      )

19

20    I.    **INTRODUCTION**

21          Now before the Court is Plaintiff RCM International, LLC's

22    ("RCM") motion to remand.  ECF No. 8 ("Mot.").  Defendants Blue

23    Mountain Biogas, LLC ("Blue Mountain") and Alpental Energy

24    Partners, LLC ("Alpental") oppose.  ECF No. 18 ("Opp'n").  The

25    motion is full briefed, ECF No. 20 ("Reply") and suitable for

26    decision without oral argument under Civil Local Rule 7-1(b).  For

27    the reasons set forth below the motion is GRANTED.

28    ///

## II.   BACKGROUND

In this case, RCM, a California limited liability company, alleges various causes of action arising out of the breach of a confidentiality agreement entered into as part of RCM's business relationship with Alpental, a Utah limited liability company.

RCM designs, manufactures, and sells anaerobic digesters, a type of technology used to convert organic wastes like manure into energy and fertilizer.  Alpental and RCM entered into a deal whereby Alpental would finance and own anaerobic digester projects designed by RCM, with a third party providing animal waste to be used to produce energy.  As a condition of entering into this relationship, which would require the exchange of information RCM considers confidential or otherwise protectable, RCM required Alpental to agree to certain confidentiality protections.  After entering into such an agreement, RCM believes that Alpental improperly used confidential information acquired under that agreement to develop and build the Blue Mountain Project, an anaerobic digester project in Utah.

In 2012, RCM filed this action in Alameda County Superior Court (the "Underlying Action").  The action was removable to federal court on the grounds of diversity of citizenship from the outset, although Alpental chose not to exercise its right to remove.  At some point during the pendency of the Underlying Action, Alpental transferred its ownership of the Blue Mountain Project to its then-wholly-owned subsidiary, Blue Mountain Biogas LLC, a Delaware limited liability company.  While RCM has always been aware of the existence of the Blue Mountain Project, discovery issues were significant in the Underlying Action, and at first, RCM

United States District Court
For the Northern District of California

was unaware of the transfer of ownership or the existence of Blue
Mountain Biogas LLC.  Nonetheless, after learning of the transfer,
RCM amended its complaint on October 7, 2014 to substitute Blue
Mountain Biogas for one of the Doe entities named in the initial
complaint.  On October 28, 2014, Blue Mountain Biogas filed notice
of removal on the grounds of diversity of citizenship.  The
Underlying Action is currently set for trial in state court
beginning on January 26, 2015.

Now RCM moves for an order remanding the action to state
court.  Alpental and Blue Mountain Biogas oppose.

**III.  LEGAL STANDARD**

28 U.S.C. Section 1441 provides that civil cases brought in
state court over which "the district courts of the United States
have original jurisdiction, may be removed by the defendant or the
defendants, to the district court of the United States for the
district and division embracing the place where such action is
pending."  28 U.S.C. § 1441(a); see also Rodriguez v. AT&T Mobility
Servs. LLC, 728 F.3d 975, 977 (9th Cir. 2013).  In this instance,
the basis for original jurisdiction is 28 U.S.C. Section 1332,
which provides federal courts with subject-matter jurisdiction
where diversity of citizenship exists among the parties and the
amount in controversy exceeds $75,000.  28 U.S.C. § 1332(a).

Notice of removal must generally be filed by a defendant
within thirty days of receipt "through service or otherwise, of a
copy of the initial pleading setting forth the claim for relief
upon which [the] action or proceeding is based . . . ."  28 U.S.C.
§ 1446(b)(1).  The removal statute should be strictly construed

against removal.  See Boggs v. Lewis, 863 F.2d 662, 663 (9th Cir. 1988).

**IV.  DISCUSSION**

None of the parties dispute that the Court has subject-matter jurisdiction over this action because diversity of citizenship exists between the parties and the amount in controversy is greater than $75,000.  Instead, this motion comes down to one question: does Blue Mountain Biogas have a right to remove this action despite Alpental's earlier failure to do so?

In RCM's view the answer is no.  RCM contends that the relationship between Alpental and Blue Mountain Biogas is so close that Blue Mountain Biogas should not have an independent right of removal under 28 U.S.C. Section 1446(b)(2)(B) ("Section 1446(b)(2)(B)").  Furthermore, RCM points to the advanced state of the Underlying Action, the discovery issues in state court, and tensions with the purposes of the removal statute.

Defendants disagree, arguing that since Destfino v. Reiswig, 630 F.3d 952 (9th Cir. 2011) and Congress's adoption of the Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63, § 103, 125 Stat. 758, 760 (2011) (the "Jurisdiction and Venue Act"), federal courts nationwide have followed the "later-served rule" to find that defendants joined and served during the pendency of a state court action, as Blue Mountain Biogas is here, may file a notice of removal even if the first-served defendants did not do so.  In Defendants' view, the adoption of the later-served rule, codified at Section 1446(b)(2)(B), admits no exceptions, and fully resolves the availability of removal in their

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

favor.  Nonetheless, Defendants dispute RCM's allegations regarding the close relationship between Blue Mountain Biogas' and Alpental.

The Court agrees with RCM.  Because of Alpental's litigation conduct and Blue Mountain Biogas' close affiliation with Alpental, they cannot be properly considered different "defendant[s]" within the meaning of Section 1446(b)(2)(B).  As a result, Alpental's failure to remove within thirty days after service renders Blue Mountain Biogas' notice of removal untimely.  28 U.S.C. § 1446(b)(1).  Nevertheless, to understand the Court's conclusion, a review of the background of these rules and their underlying purposes is necessary.

A defendant seeking to remove a case from state to federal court must file notice of removal within thirty days of receiving a copy of the initial pleading.  28 U.S.C. § 1446(b)(1).  As Judge Posner pointed out,

> The purpose of the 30-day limitation is twofold: to deprive the defendant of the undeserved tactical advantage that he would have if he could wait and see how he was faring in state court before deciding whether to remove the case to another court system; and to prevent the delay and waste of resources involved in starting a case over in a second court after significant proceedings, extending over months or even years, may have taken place in the first court.

Wilson v. Intercollegiate (Big Ten) Conference Athletic Ass'n, 668 F.2d 962, 965 (7th Cir. 1982).

Prior to Destfino and the Jurisdiction and Venue Act, a split of authority existed between two potential approaches to determining whether a notice of removal met that thirty-day limitation.  The first approach was the so-called "first-served rule," which held that "the thirty-day removal period begins to run

United States District Court
For the Northern District of California

for all defendants on the date the first defendant receives the initial complaint . . . ." McAnally Enters., Inc. v. McAnally, 107 F. Supp. 2d 1223, 1226 (C.D. Cal. 2000), abrogated by Destfino, 630 F.3d at 956; see also Brown v. Demco, Inc., 792 F.2d 478 (5th Cir. 1986).  Courts adopted this approach for two reasons.  First, the first-served rule is consistent with the requirement in multiple-defendant cases that all defendants unanimously join a removal petition.  See Chicago, Rock Island & Pac. Ry. Co. v. Martin, 178 U.S. 245, 248 (1900); Emrich v. Touche Ross & Co., 846 F.2d 1190, 1193 n.1 (9th Cir. 1988).  Second, the first-served rule promotes the prompt determination of the proper forum.  Brown, 792 F.2d at 482.

The other approach, the later-served rule, was endorsed by Destfino and Congress out of concern for "[f]airness to later-served defendants."  H.R. Rep. No. 112-10, at 14 (2011); see also Destfino, 630 F.3d at 955-56 (noting that courts that adopted the later-served defendant rule did so "for reasons grounded in statutory construction, equity and common sense").  The Destfino Court and Congress' concern with the first-served rule was that it enabled plaintiffs to pursue a strategy of not naming defendants they perceived as likely to remove until the initial thirty-day period for removal had lapsed.  After that time ran, under the first-served approach, removal would be barred, even if the later-served defendant wished to remove.  While the later-served rule does not "go so far as to give already-served defendants a new thirty-day period to remove whenever a new defendant is served," it does hold that "each defendant is entitled to thirty days to exercise his removal rights after being served."  Destfino, 630

F.3d at 956.  As a result, the later-served rule has the virtue of
treating all defendants equally, and ensures that plaintiffs cannot
"engage in unfair manipulation by delaying service on defendants
most likely to remove" until after the initial thirty-day period
has lapsed.  Id. at 955-56.

     After Destfino was decided, Congress passed the Jurisdiction
and Venue Act, codifying the later-served rule in 28 U.S.C. Section
1446(b).  Section 1446(b) now provides that "[e]ach defendant shall
have 30 days after receipt by or service on that defendant of the
initial pleading or summons" to file notice of removal, and that if
"defendants are served at different times, and a later-served
defendant files a notice of removal, any earlier-served defendant
may consent to the removal even though that earlier-served
defendant did not previously initiate or consent to removal."  28
U.S.C. § 1446(b)(2)(B)-(C).

     In Defendants' view, the adoption and codification of the
later-served rule makes clear that Blue Mountain Biogas has a right
of removal without exception.  Nevertheless, as others have
recognized, the adoption of the later-served rule and its
formulation in the Jurisdiction and Venue Act is not so clear-cut.
See Paul E. Lund, The Timeliness of Removal and Multiple-Defendant
Lawsuits, 64 Baylor L. Rev. 50, 98-111 (2012).  Particularly
relevant here are two issues related to the potential for
substantial delays in removal.  First, one of the traditional
arguments in favor of the later-served rule is that while it might
result in delays in removal, a plaintiff can avoid any delay by
simply serving each potential defendant at the same time.  See
Destfino, 630 F.3d at 956 ("[P]laintiffs can bring about quick

determination of the forum by serving all defendants promptly.")
This may well be true in most cases, however it assumes that
plaintiffs will always have the ability to serve all the defendants
at the outset of an action.  In some cases even diligent plaintiffs
may be unable to serve all the defendants at the commencement of
the action because the identity of a defendant is unknown or a
defendant is avoiding service.[1]  See Lund, Timeliness, supra, at
105-06.  Second, and relatedly, it is not clear whether the
adoption of the later-served rule is compatible with a conception
of waiver.  Id. at 108.

    In this case, remand is appropriate for three reasons.  First,
because of Alpental's litigation behavior and its close
relationship with Blue Mountain Biogas, construing Section

---

[1] To that end, during a hearing on the Jurisdiction and Venue Act,
Representative Adam Schiff posed the following question to Chief
Judge Janet Hall of the United States District Court for the
District of Connecticut, a member of the Judicial Conference's
Committee on Federal-State Jurisdiction:

> "Under one of the sections, the proposal would
> allow the latest-served defendant in a
> multiple-defendant case 30 days after service
> to file a removal petition in order to be fair
> to late-served defendants. How would this,
> though, affect the trial date, if a defendant
> were purposely evading service? And how do you
> deal with those circumstances?"

Federal Courts Jurisdiction Clarification Act: Hearing before the
Subcomm. on Courts, the Internet, and Intell. Prop. of the H. Comm.
on the Judiciary, 109th Cong. (Nov. 15, 2005) at 67.
Unfortunately, Judge Hall appears to have misunderstood the
question and responded that the one-year limitation on removal for
diversity cases now codified at 28 U.S.C. Section 1446(c)(1) would
address this situation.  RCM makes this point in its reply as well,
however both Judge Hall and RCM are mistaken.  Reply at 11-12.  The
one-year limitation for removals premised on diversity only applies
to cases which were not removable as originally filed, Ritchey v.
Upjohn Drug Co., 139 F.3d 1313, 1316 (9th Cir. 1998); see also 28
U.S.C. Section 1446(c)(1).  As discussed below, Representative
Schiff's hypothetical identifies a problem similar to the one the
Court must address here.

**United States District Court**
For the Northern District of California

1446(b)(2)(B) to grant Blue Mountain Biogas an independent right of
removal would be incompatible with any of the statute's underlying
purposes and the Ninth Circuit's directive to construe the removal
statutes strictly against removal.  Gaus v. Miles, Inc., 980 F.2d
564, 566 (9th Cir. 1992).  Second, construing removal as timely
despite these connections would also undermine the purpose of
Section 1446(b)(1), by granting "the defendant of the undeserved
tactical advantage . . . [of] wait[ing] [to] see how he was faring
in state court before deciding whether to remove the case to
another court . . . ."  Wilson, 668 F.2d at 965.  Third, denying
remand would ignore the advanced state of the Underlying Action,
and circumvent, if not fully undermine a pending sanctions motion
in state court.

   As mentioned before, the concern underlying the adoption of
the later-served defendant rule is fairness to later-served
defendants.  However that rationale does not apply when the failure
to join the later-served defendant sooner was the result of a
later-served defendant's obfuscation or avoiding service.  After
all, there is no "manifest unfairness [in] depriving later-served
defendants of a federal forum" where the later-served defendant is
aware of the case and nonetheless seeks to avoid being joined.
Destfino, 630 F.3d at 956.  Other courts have recognized this
problem, noting that "[t]he rationale for preserving the later-
served defendant's removal right [does] not apply . . . in
instances when defendants are actually part of the same operating
entity rather than separate and distinct entities."  Eltman, 151
F.R.D. at 318 n.15; see also Pocono Springs Civic Ass'n Inc. v.
Rich One, Inc., No. 00-CV-2034, 2001 WL 114390, at *1 (M.D. Pa.

9

1   Jan. 29, 2001); <u>Higgins v. Ky. Fried Chicken</u>, 953 F. Supp. 266, 270

2   (W.D. Wis. 1997).

3        Here, RCM's failure to serve Blue Mountain Biogas sooner was

4   not an attempt to avoid the possibility of removal; instead it was

5   the result of Alpental's obfuscatory discovery behavior.  RCM

6   points to several instances during discovery where Alpental should

7   have revealed the existence of Blue Mountain Biogas, but

8   nonetheless failed to do so.  For example, RCM requested

9   information about, among other things, limited liability companies

10  with which Alpental's Managing Partner, Paul Stephan, was

11  affiliated.  <u>See</u> ECF No. 21 ("Supp. Duda Decl.") Ex. O ("Special

12  Interrogs.") at ¶ 19.  In response, Alpental claimed that "Paul

13  Stephan is an executive director of Geopower Energy, <u>but is</u>

14  <u>affiliated with no other entity</u> . . ." that met the definition set

15  forth by RCM.  <u>Id.</u> at Ex. P at 4.  Yet, according to the Utah

16  business records, one of the three registered principals of Blue

17  Mountain Biogas, LLC is Paul Stephan.  ECF No. 10 ("Duda Decl.")

18  Ex. I.  Similarly, RCM requested all documents "relating to

19  Anaerobic Digester Technology that Alpental provided to or shared

20  with any entity" other than those of which RCM was aware.  Supp.

21  Duda Decl. Ex. N No. 25.  Yet, in response to that request,

22  "Alpental provided no correspondence, contract, or proposals with,

23  from, or to Blue Mountain Biogas, LLC."  <u>Id.</u> at ¶ 8.  To be sure,

24  it does appear that two[2] documents were produced that referred to

25  "Blue Mountain Biogas, LLC."  <u>See</u> ECF No. 18-1 ("Dunkelberger

26

27  [2] A third document states that "[o]ur facility name is Blue
    Mountain Biogas," however this is not particularly significant
28  given that it is undisputed that the parties and others generally
    refer to the project as the "Blue Mountain Project."

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1    Decl.") at ¶¶ 4(a)-(b).  Nonetheless, this does not alter the

2    Court's conclusion.  To the contrary, only one of the emails was

3    sent by Alpental, and, illustrating the close relationship between

4    the entities, all correspondence involved only individuals

5    purporting to represent Alpental and state regulators.

6    Furthermore, falling back on the production of two emails

7    containing passing references to Blue Mountain Biogas is misleading

8    at best when Alpental should have furnished more directly

9    responsive answers in discovery.

10       While Defendants suggest, pointing to cases recognizing the

11   applicability of the corporate veil to limited liability companies,

12   that the Court should not impute Alpental's actions to Blue

13   Mountain Biogas, there is good reason to do so here.  See Opp'n at

14   12 (citing d'Elia v. Rice Dev. Inc., 147 P.3d 515, 521 (Utah Ct.

15   App. 2006) and Feeley v. NHAOCG, LLC, 62 A.3d 649, 667 (Del. Ch.

16   2012) for the proposition that the corporate veil applies to

17   limited liability companies).  For example, Alpental is Blue

18   Mountain Biogas' registered agent with the Utah Secretary of State.

19   Duda Decl. Ex. I.  Alpental, its managing partner, and its vice

20   president are Blue Mountain Biogas' only principals.  Id.  They

21   share the same physical address, id., and the same counsel in this

22   matter.  Notice of Removal at 1.  Defendants stake their argument

23   largely on the current ownership structure of Blue Mountain Biogas,

24   although they do not deny that at relevant times during this

25   litigation Blue Mountain Biogas was a wholly-owned subsidiary of

26   Alpental.  Duda Decl. Ex. D ("Manure Supply Agreement") at 1.  Nor

27   do they deny any of the other facts regarding Alpental's

28   relationship with Blue Mountain Biogas.  Instead, focusing on the

**United States District Court**
For the Northern District of California

1   Manure Supply Agreement (and ignoring all the other indicia of a

2   close relationship between Alpental and Blue Mountain Biogas), they

3   argue that RCM's reliance on the Manure Supply Agreement represents

4   "an egregious omission" in light of Blue Mountain Biogas' current

5   ownership structure.  Opp'n at 13.  This is bluster.  RCM's

6   argument is that the relationship between Alpental and Blue

7   Mountain Biogas is so close that Alpental's decision not to remove

8   the case to federal court when first filed should be treated as a

9   decision by both Alpental and Blue Mountain Biogas.  In assessing

10  that argument, the ownership structure as it existed at the time

11  Alpental declined to remove the case is highly relevant, as it

12  shows it would not be unfair to deny Blue Mountain Biogas the

13  opportunity to remove now.  Furthermore, even if the relevant time

14  period was when Blue Mountain Biogas removed the action, the

15  ownership structure of Blue Mountain Biogas does not alter the

16  other undisputed facts demonstrating Alpental's and Blue Mountain

17  Biogas' close relationship and identity of interests.

18      Accordingly, the Court is convinced that Alpental and Blue

19  Mountain Biogas can properly be considered "part of the same

20  operating entity rather than separate and distinct entities."

21  Eltman, 151 F.R.D. at 318 n.15.  As a result, the Court concludes

22  that Blue Mountain Biogas lacks an independent right of removal

23  under Section 1446(b)(2)(B).

24      Amplifying this conclusion are two other pragmatic

25  considerations.  First, permitting removal here would unjustifiably

26  permit forum shopping by allowing first-served defendants to

27  litigate in state court for extended periods of time while hiding

28  subsidiaries or closely affiliated entities, only to reveal them on

**United States District Court**
For the Northern District of California

the eve of trial and start the litigation anew in a different forum.  Here, Alpental has been litigating in state court for more than two years.  The waste of judicial resources, and potential for substantial delays and expense in resolving this case under these circumstances is enormous.  As a result, interpreting Section 1446(b)(2)(B) to grant Blue Mountain Biogas an independent right of removal would undermine the twin purposes of the thirty day limitation in Section 1446(b)(1).  See Wilson, 668 F.2d at 965. Second, a motion for sanctions is pending in the Underlying Action related to the discovery abuses cited above.  Without more information, the Court cannot be certain of the merits of that motion, but given that the Court likely "lack[s] authority to impose sanctions for pleadings filed in state court prior to removal," this only amplifies the Court's concerns about removal. See Pollard v. City & Cnty. of San Francisco, 261 F. App'x 16, 17 (9th Cir. 2007) (citing Buster v. Greisen, 104 F.3d 1186, 1190 n.4 (9th Cir. 1997)).  It is almost inconceivable that a party facing a motion for sanctions for state court misconduct should be able to remove the case, thus divesting the state court of an opportunity to impose sanctions, while simultaneously removing to a court without jurisdiction to impose sanctions for the underlying misconduct.

Defendants view these considerations as improper.  In their view, the adoption of the later-served Defendant rule overruled the line of cases applying equitable principles in determining whether removal is timely or appropriate.  See, e.g., Yellow Cab Co. v. Gasper, 994 F. Supp. 344, 348 (W.D. Pa. 1998); Samura v. Kaiser, 715 F. Supp. 970, 971 (N.D. Cal. 1989); Transp. Indem. Co. v. Fin.

**United States District Court**
For the Northern District of California

1  <u>Tr. Co.</u>, 339 F. Supp. 405, 409 (C.D. Cal. 1972).  The Court

2  disagrees.  In fact, one of these cases is almost directly on

3  point, and determined remand was appropriate without reference to

4  either the first-served or later-served defendant approaches.

5  Instead, in <u>Yellow Cab Company of Pittsburgh v. Gasper</u>, the court

6  remanded a case in which "all of the entities joined as defendants

7  in this case . . . are closely held corporations owned and

8  controlled by one man," all the entities involved were represented

9  by the same counsel, substantial proceedings had already taken

10  place in state court, permitting removal would allow for the

11  relitigation of several issues, and a motion to hold defendants in

12  contempt was pending in state court.  994 F. Supp. at 349.  While

13  Defendants point to a subsequent case criticizing consideration of

14  "equities, discretionary reasons and/or policy considerations" in

15  determining whether to remand a case, <u>Safway Steel Scaffolds Co. v.</u>

16  <u>Safway Steel Prods.</u>, 2:06-cv-312, 2006 U.S. Dist. LEXIS 28373, at

17  *3 (W.D. Pa. May 11, 2006), the Court believes the best approach

18  would allow for the consideration of these weighty practical

19  consequences in determining whether remand is appropriate.

20

21  **V.   CONCLUSION**

22      Because the Court concludes Blue Mountain Biogas lacks an

23  independent right of removal under Section 1446(b)(2)(B), the

24  notice of removal was untimely.  28 U.S.C. § 1446(b)(1).

25  Accordingly, remand is appropriate and the motion is GRANTED.  <u>See</u>

26  28 U.S.C. § 1447(c).  The Clerk is hereby directed to mail a

27  certified copy of this order to the clerk of the Alameda County

28  Superior Court, terminate the motion to dismiss, ECF No. 23, and

1    close the case.  See id.

2

3          IT IS SO ORDERED.

4

5          Dated: December 4, 2014

           UNITED STATES DISTRICT JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
For the Northern District of California